## BOSTON & WORCESTER RAILROAD CORPORATION *vs.* FRANKLIN HAVEN & another.

If a mortgage of real estate, executed by a railroad company to trustees to secure the payment of certain bonds therein described, with semi-annual interest, provides that in default of payment the trustees 'may enter into and take possession of the premises, and " by themselves, their agents or substitutes, have, use and enjoy the same, making from time to time all needful repairs, alterations or additions thereto, and, after deducting the expenses of such use, repairs, alterations and additions, apply the proceeds thereof to the payment of the principal and interest of all said bonds remaining due and unpaid, *pro rata*," and that the trustees " shall be entitled to receive proper compensation for every labor or service performed in the discharge of said trust, in case they shall be compelled to take possession of said premises, or any part thereof, or to manage the same," the trustees, having taken possession for breach of condition, may, on a bill to redeem, be allowed any sum which is reasonable for their own services, and expenditures authorized by the mortgage, but not for counsel fees in suits between them and the mortgagors, or for insurance procured by them without the request of the mortgagors.

BILL IN EQUITY to redeem certain land, with buildings and railroad tracks thereon, from a mortgage executed by the Grand Junction Railroad and Depot Company to the defendants and Robert G. Shaw, now deceased, to secure the payment of certain bonds, to the amount of $350,000. The mortgage

contained the following provision, in addition to those copied in 4 Allen, 81–83 : " And it is further mutually agreed . . . . . that said party of the second part, their successors and assigns, shall be entitled to receive proper compensation for every labor or service performed in the discharge of said trust, in case they shall be compelled to take possession of said premises, or any part thereof, or to manage the same."

It appeared by the report of an assessor that the defendants obtained formal possession of the mortgaged premises on the 22d of July 1859, as stated in 4 Allen, 80 ; but that the actual possession of a portion of the mortgaged premises remained with the plaintiffs, and of another portion with Nathaniel Adams and another, while the residue of the mortgaged premises has been held by the defendants. Suits were brought by the defendants to recover possession of the portions of the mortgaged premises which have been held, as above described, by the plaintiffs and Adams and another, which were still pending when the assessor's report was made. See *post*, 363, 369.

In order to derive an income from the portions of the premises held by the defendants, they were obliged to employ agents and laborers; and, to preserve the property, they were obliged to make considerable expenditures. It was agreed by the parties that the account should be stated as of October 1st 1863.

In the suit by the defendants against the plaintiffs for possession, conditional judgment was rendered for $52,500. The interest accrued upon the bonds, which the mortgage was given to secure, from July 1st 1856 to October 1st 1863, was $152,250. The total amount of the gross earnings of the property, since the trustees took possession, was $106,615.54. The total amount of expenditures, including the charge for the personal services of the trustees, was $76,329.68. For their personal services, they charged $5000 ; which was found to be but a fair and reasonable compensation. They charged $2865.13, paid for legal services. The assessor found that the services were rendered, that the above amount was actually paid, and that the trustees could not have performed their duty without incurring this expense. They charged $517.25, paid for insurance

effected by them on portions of the property ; and the assessor found that they would have been culpable if they had neglected to make the insurance.   They charged $1196.79, expended in the construction of an additional railway, and in the purchase of scales.   The assessor found that this amount was actually expended for these purposes, that the income was thereby greatly increased, and that the permanent value of the mortgaged property was enhanced to the full amount of the expenditure.   The assessor accordingly allowed all of these charges, and the plaintiffs alleged exceptions.

The questions of law arising upon the assessor's report were reserved by the chief justice for the determination of the whole court.

*G. S. Hale,* for the plaintiffs, cited, as to the charge for services, *Tucker* v. *Buffum,* 16 Pick. 46 ; *Eaton* v. *Simonds,* 14 Pick. 105 ; *Gibson* v. *Crehore,* 5 Pick. 146 ; *Bonithon* v. *Hockmore,* 1 Vern. 316 ; *Godfrey* v. *Watson,* 3 Atk. 517 ; *Davis* v. *Dendy,* 3 Madd. 170 ; as to counsel fees, *Godfrey* v. *Watson,* 3 Atk. 517 ; *Harbinson* v. *Harrell,* 19 Alab. 753 ; as to insurance, *Saunders* v. *Frost,* 5 Pick. 270.

*S. Bartlett,* for the defendants, cited some of the cases cited for the plaintiffs, and, as to the charge for constructing the railway, *Saunders* v. *Frost,* 5 Pick. 259 ; *Reed* v. *Reed,* 10 Pick. 398; *Boston Iron Co.* v. *King,* 2 Cush. 405 ; *Woodward* v. *Phillips,* 14 Gray, 132.

CHAPMAN, J.   It is conceded that the plaintiffs have a right to redeem, and the case has been sent to an assessor to state an account of the sums due to the defendants as mortgagees, and also of the rents and profits due from them.   Upon the coming in of his report, certain objections are made to some of the items therein stated.

1. The amount allowed for the superintendence and management of the property is objected to, and the cases of *Tucker* v. *Buffum,* 16 Pick. 46, and *Gibson* v. *Crehore,* 5 Pick. 146, are cited in support of the objection.   But this case is quite unlike either of them.   The property consists of a wharf, railroad and warehouses, and its profitable management requires much labor

and expense. In making the mortgage, the parties took into consideration the peculiar nature of the property, and provided that if the mortgagees, who are mere trustees, should take possession for condition broken, they might "by themselves, their agents or substitutes, duly constituted, have, use and enjoy the same, making from time to time all needful· repairs, alterations or additions thereto, and, after deducting the expenses of such use, repairs, alterations and additions, apply the proceeds thereof to the payment of the principal and interest," &c. It also contains a provision that they " shall be entitled to receive proper compensation for every labor or service performed in the discharge of said trust, in case they shall be compelled to take possession of said premises, or any part thereof, or to manage the same." All the sums which the assessor has allowed for services and expenditures come within these stipulations, and he has found that the charges are reasonable.

2. The charges for money paid to counsel for legal services ought not to be allowed. It is suggested in behalf of the defendants that they were paid for the benefit of the mortgagors as well as of the mortgagees. But it is obvious that the litigation which has been had in this court has been for the exclusive benefit of the bondholders, of the one part, and for the benefit of the mortgagors and their lessees, of the other part. As the trustees have paid these sums for the benefit of the bondholders, the amount should be charged to them and not to the plaintiffs. It is like an ordinary case where a mortgagee brings a suit, and the mortgagor contests the whole or a part of the claim, whereby the mortgagee is put to the expense of employing counsel. Legal costs are all that the mortgagors are liable to pay in their controversy with the mortgagees.

3. The charges for insurance should not be allowed. These were for the benefit of the bondholders, but not for the benefit of the mortgagors or the plaintiffs. Insurance procured by a mortgagee is not chargeable to the mortgagor, unless it is procured at his request or by his agreement. *Saunders* v. *Frost*, 5 Pick. 270.

4. A question is raised as to the decree that should be

entered.   It appears that the principal sum is not yet due; and, according to the terms of the mortgage, upon payment of the arrears of interest, the plaintiffs ought to be restored to the possession of the premises, and to hold the same so long as they continue to perform the condition of the mortgage.   The amount to be deducted for rents and profits cannot now be ascertained, because it depends partly upon what shall be received by the defendants upon the judgment to be rendered in two pending suits ; one against these plaintiffs, and the other against Adams and others.   This case must be continued till that amount shall be ascertained, and in the mean time the assessor's report should be recommitted to him, to make a report that shall include the rents and profits and expenses up to the time when the decree shall be entered, and then stand for further direction.